**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**JAMES ELI HUFF, II**                                                            **PETITIONER**
Reg. #66671-079

VS.                     **CASE NO.: 2:06CV00002 WRW/BD**

**LINDA SANDERS**                                                       **RESPONDENT**
**Warden, FCC,
Forrest City, Arkansas**

**RECOMMENDED DISPOSITION**

**I.**      **Procedure for Filing Objections:**

The following recommended disposition has been sent to United States District Judge William R. Wilson, Jr.  Any party may file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If an objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date you receive the Recommended Disposition.  A copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

      Clerk, United States District Court
      Eastern District of Arkansas
      600 West Capitol Avenue, Suite A-149
      Little Rock, AR 72201-3325

**II.   Introduction:**

Pending is Petitioner James Eli Huff, II's Petition for Writ of Habeas Corpus (docket entry #1). Respondent Linda Sanders has responded (#8), and Petitioner has replied (#9). Also pending is Petitioner's Motion to Amend or Correct his Petition (#20). Respondent answered (#21) and substantially changed her original position regarding the pending petition. Petitioner's proposed amended petition does not add any new facts or claims for relief. Accordingly, the Court recommends that Petitioner's Motion to Amend (#20) be DENIED. For the reasons that follow, however, the Court recommends that this Petition for Writ of Habeas Corpus (#1) be GRANTED in part and DENIED in part.

**III.   Background:**

On December 15, 1995, Petitioner received a federal prison sentence for distribution of marijuana. He was released from federal custody on July 18, 2000, with five years of supervision to follow. On September 11, 2001, Petitioner was arrested for driving while intoxicated, but the charges stemming from this arrest were dismissed. Petitioner was arrested again on August 29, 2002, for forgery. The charges originating from this arrest were burglary, credit/debit card abuse (forgery), and unlawful possession of a firearm (#8-5, p. 6). Petitioner posted bond and was released on September 1, 2002. On September 10, 2002, after consultation with his United States Probation Officer, Petitioner entered a federal residential drug treatment center (#2-2, p. 4).

Petitioner remained in the residential drug treatment center while awaiting a supervised release revocation determination, until he was taken into custody by the State of Texas on December 4, 2002. According to Respondent, this arrest placed Petitioner in the primary custody of the State of Texas (# 8, p. 2). On December 27, 2002, Petitioner was released to a federal detainer and housed in the Federal Detention Center in Houston ("FDC-Houston") (#8-5, p. 6). Petitioner remained exclusively in federal facilities from December 27, 2002 until August 13, 2003.

While in federal custody, Petitioner received a 24-month sentence for supervised release violations on May 16, 2003. On the same day, Petitioner received a 180-month sentence for being a felon in possession of a firearm. The sentencing judge[1] ordered the two sentences to run consecutively (#8-7, p. 3). At the time, there was no other state or federal sentence in existence, and Judge Lake did not mention the yet to be imposed state sentence. Judge Lake then ordered Petitioner remanded to the custody of the United States Marshal (#8-7, p. 3).

Petitioner remained incarcerated in FDC-Houston until July 10, 2003, when he was transferred to the Federal Correctional Institution in Oakdale, Louisiana ("FCI-Oakdale"). The record shows that the Bureau of Prisons ("BOP") designated FCI-Oakdale as the facility at which Petitioner was to serve his federal sentence (#8-4, p. 2). The BOP then changed Petitioner's admission status to that of a temporarily housed holdover (#8-4, p.

---

[1] The Honorable Simeon Timothy Lake, III, United Stated District Judge for the Southern District of Texas.

2).  Oakdale does have a detention center for pretrial and holdover inmates.  Petitioner, however, was placed in FCI-Oakdale, not in the detention center.[2]

On August 13, 2003, Petitioner was delivered to the State of Texas (#8-5, p. 3). On September 10, 2003, the State of Texas sentenced Petitioner to 12 years in prison on the charges stemming from his August 29, 2002 arrest.  This arrest was also the basis for Petitioner's federal supervised release revocation and federal felon-in-possession conviction.  The state court judge ordered Petitioner's state sentence to run concurrent with his federal sentence and remanded him to federal incarceration (# 2-2, p. 15).

Petitioner remained in the custody of the State of Texas until January 2, 2004, when Petitioner was returned to the FDC-Houston.  While housed in FDC-Houston, the State of Texas granted Petitioner's parole.  On August 13, 2004, Petitioner was returned to the State of Texas.  On August 25, 2004, Petitioner completed his state parole certificate and was released from state custody.  According to Petitioner, the federal government did not issue a detainer and he was released, only to self-surrender to federal authorities on September 1, 2004.  According to Respondent, however, Petitioner began to serve his federal sentence only on August 25, 2004, when he was paroled by the State of Texas.

---

[2] The facilities are distinguishable by the facility code.  Petitioner was placed in "OAK", signifying FCI-Oakdale, not "OAD", signifying the detention center (# 8-5, p. 3).

Originally, Petitioner was not given any prior custody credit toward his federal sentence from before August 25, 2004. The BOP has since changed its position regarding prior custody credit.

On March 12, 2008, Petitioner filed a Motion to Amend (#20). Respondent treated the Motion to Amend as a request for a *nunc pro tunc* designation (#21). In granting Petitioner's request, the BOP credited Petitioner with 167 additional days of pre-sentence credit and designated Petitioner's service in the Texas Department of Corrections as service toward his federal sentence (#21). The only pre-sentence credit still contested by the BOP is the time Petitioner spent in a residential drug treatment center from September 11, 2002, until December 3, 2002.

### IV.   Analysis of Petitioner's Claims:

The Attorney General, through the BOP, has responsibility for computing federal sentencing credit and determining the commencement of sentences under 18 U.S.C. § 3585. *United States v. Tindall*, 455 F.3d 885, 888 (8th Cir. 2006) (citing *United States v. Wilson*, 503 U.S. 329, 334-35, 112 S.Ct. 1351 (1992)). These determinations are made after the inmate has begun serving his or her sentence. *Id*. If an inmate disagrees with the BOP's computation, the proper avenue for review is administratively through the BOP, then judicial review under 28 U.S.C. § 2241. *Id*.

A.   **<u>Administrative Exhaustion:</u>**

Respondent initially asked this Court to dismiss the pending petition for failure to exhaust administrative remedies (#8). A petitioner is required to exhaust his administrative remedies before filing a 28 U.S.C. § 2241 petition for writ of habeas corpus. *United States v. Chappel*, 208 F.3d 1069 (8th Cir. 2000) (citing *United States v. Iversen*, 90 F.3d 1340, 1344 (8th Cir 1996) and *Kendrick v. Carlson*, 995 F.2d 1440, 1447 (8th Cir. 1993)). Failure to exhaust does not deprive the Court of jurisdiction, however, as the exhaustion requirement is judicially created, not jurisdictional. *Lueth v. Beach*, 498 F.3d 795, 797 n. 3 (8th Cir. 2007). Regardless, this Court thoroughly reviewed the record and cannot find fault in Petitioner's use of the administrative process.

The BOP has in place an administrative remedy process for federal inmates. See 28 C.F.R. §§ 542.10-19. First, an inmate must request an Informal Resolution ("BP-8") of the issue from prison staff. 28 C.F.R. § 542.13(a). If the issue is not resolved, the inmate must submit a formal, written Administrative Remedy Request ("BP-9") to the Warden. 28 C.F.R. § 542.14. An inmate who is not satisfied with the Warden's response to the BP-9 may submit an appeal ("BP-10") to the Regional Director. 28 C.F.R. § 542.15(a). An inmate who is not satisfied with the Regional Director's response to the

BP-10 may submit a final appeal ("BP-11") to the General Counsel.[3]  *Id.*  Once the request or appeal is filed, the Warden must respond within 20 calender days.[4]  28 C.F.R. § 542.18.  The Warden may extend the response time for an additional 20 days.  *Id.*  If the inmate does not receive a response within the time allotted, the inmate may consider the absence of a response to be a denial.  *Id.*

Respondent concedes that Petitioner attempted to exhaust his administrative remedies by filing administrative requests and appeals at every level possible.  Respondent contends, however, that Petitioner filed several appeals improperly, thus barring issuance of this writ.

The record shows that Petitioner filed the required BP-8, which was denied, and then timely filed a BP-9.  The BP-9 was dated July, 23, 2005.  Warden Sanders's response to the BP-9 is dated August 22, 2005, well after the 20 calender days in which she had to respond.  Warden Sanders may have given herself an extension of time to respond under 28 C.F.R. § 542.18, thus, her response would have been timely.  This is questionable, however, as § 542.18 requires staff to inform the inmate of the extension in writing, and Respondent has not provided any evidence, *i.e.* a copy of notice or data notation, that Petitioner was ever informed of an extension.  28 C.F.R. § 542.18.  According to Petitioner, he never received a response from Warden Sanders, or the return of his

---

[3] The appeal to the General Counsel is the final step in administrative exhaustion.

[4] The Regional Director must respond within 30 calender days and the General Counsel within 40 calender days.

original BP-9. Respondent makes no serious attempt to counter Petitioner's assertion. Petitioner then, as the regulations provide, properly treated his BP-9 as denied.

Petitioner then timely filed the required BP-10 and stated that he had not received a response from the Warden or the return of his original BP-9 (# 2-3, p.1). Petitioner created and attached a replica of his BP-9 to his BP-10 (# 2-3, p. 2). This apparently was unsatisfactory to the regional office, as they ordered Petitioner to resubmit his appeal with the original BP-9 and the Warden's response within 10 days (#2-3, p. 3). Petitioner instead filed his BP-11 noting that the regional office requested an impossibility, *i.e.*, that he file the original BP-9 that was never returned to him, and file the Warden's response that Petitioner did not believe existed (#2-3, p. 4). Although not argued by Petitioner, it appears he could not have complied with the regional office's instructions in a timely manner, even if he had possessed the requested documents.[5] In his BP-11, Petitioner requested that the General Counsel review his sentence calculation or order the regional office to accept and review his BP-10 (#2-3, p. 4). General Counsel did neither, instead rejecting Petitioner's BP-11 for filing at the wrong level (#2-3, p. 5). Of course, by the

---

[5] Petitioner's BP-10 was dated September 23, 2005, but not "logged as received" under 28 C.F.R. § 542.18 until September 29, 2005, or six days after completion. Petitioner received his rejection notice on October 12, 2005, and his response submission was due on October 15, 2005, ten days after the October 5, 2005 date of the rejection notice. If Petitioner had complied immediately with the regional office's directions, and it again had taken six days for the submission to be logged as received, the submission would of been "filed" on or about October 18, 2005, three days after it was due.

time his BP-11 was rejected, Petitioner could not resubmit his BP-10 because the time to appeal or resubmit had lapsed.

The purpose of administrative exhaustion is to allow an agency notice of a complaint and an opportunity to address it. *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004). A review of the record shows, as Respondent concedes, that Petitioner attempted to file at every possible level. It is also clear that Petitioner attempted to recreate documents he did not have in an attempt to comply with filing requirements. Petitioner gave the BOP fair notice and several opportunities to address his concerns. The record shows quite clearly that Petitioner attempted to exhaust his administrative remedies, but was unable to comply with the BOP's demands. Administrative exhaustion is not a "game of legal gotcha." *Schneider v. Delo*, 85 F.3d 335, 339 (8th Cir. 1996). Petitioner exhausted his administrative remedies to the fullest extent allowed by the BOP. Accordingly, this Court cannot recommend dismissal of this petition for lack of administrative exhaustion.

    **B.**    **Petitioner's Sentence Computation:**

Petitioner requests that the BOP compute his federal sentence to run from the date it was imposed and that he receive pre-sentence detention credit beginning with his admission into the federal residential drug treatment center on September 10, 2002. Respondent initially denied that Petitioner was entitled to any of the requested relief. Respondent's position has now changed, as evidenced by the response (#21) to

Petitioner's Motion to Amend (#20). Regardless of Respondent's current position, Petitioner is entitled to almost all of the relief he requests. Petitioner's federal sentence should run from the date it was imposed, concurrent with his state sentence, and he should receive most of the pre-sentence detention credit he requests.

### 1. **Commencement of Petitioner's Federal Sentence:**

A sentence of imprisonment commences on the date the defendant is received into custody awaiting transportation to the official detention center where the sentence will be served. 18 U.S.C. § 3585(a). On May 16, 2003, Petitioner received consecutive federal sentences of 24 and 180 months. He was remanded to the custody of the United States Marshal (#8-7, p. 3).

Respondent claims that Petitioner's sentence did not commence until August 25, 2004, and that Petitioner was only temporarily in federal custody until that time. The record, however, shows otherwise. At the time Petitioner received his federal sentences, there were no other sentences in existence. After being sentenced, Petitioner remained in federal custody, awaiting transfer to a federal prison, until his designation and transfer on July 10, 2003 (#8-4, p. 2). After Petitioner was released from the State of Texas to a federal detainer, he was in the primary custody of the United States (#8-5, p. 6, ¶ 2).[6] See *U.S. v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005) (a sovereign relinquishes primary

---

[6] Although a Writ of Habeas Corpus ad Prosequendum was issued along with an arrest warrant, the Petition for Warrant or Summons (#8-5, p. 5-7) clearly states that Petitioner was released to a federal detainer.

jurisdiction by releasing an individual on bail). In addition, it appears the writs requesting transfer of Petitioner were from the Montgomery County Sheriff and the Texas Department of Correction, not from the United States (#8-5, p. 3).

Respondent admits that a sentence commences on the date of imposition when a prisoner is serving no other federal or state sentence, and is in exclusive federal custody (#8, ¶ 11). Accordingly, Petitioner's sentence commenced on May 16, 2003.

### 2. Concurrent Sentences:

The State of Texas ordered Petitioner's state sentence to run concurrent with his federal sentences. Clearly, the state court cannot determine Petitioner's federal sentence. When there is any conflict, the federal sentence controls. *U.S. v. Mayotte*, 249 F.3d 797, 799 (8th Cir. 2001). In this case, there is no conflict between Petitioner's state and federal sentences. Petitioner's federal sentences were ordered to be served consecutively. Judge Lake did not order the federal sentences to run consecutive to the yet to be imposed state sentence, even though he was aware of the pending charges, even though at the time of sentencing, he had clear authority to order the federal sentences to run consecutive to any yet to be imposed state sentence. *United States v. Brown*, 920 F.2d 1212, 1217 (5th Cir. 1991), abrogated on other grounds, *United States v. Candia*, 454, F.3d 468, 472-73 (5th Cir. 2006).

Respondent originally stated that under 18 U.S.C. § 3584, the BOP is required to treat Judge Lake's silence regarding the yet to be imposed state sentence as ordering

consecutive sentences. Section 3584 does contain a presumption regarding federal sentences. See *Fegans v. U.S.*, 506 F.3d 1101 (8th Cir. 2007) (recognizing a presumption under § 3584(a) regarding federal sentences). It is questionable, however, whether this presumption applies to yet to be imposed state sentences. See *McCarthy v. Doe*, 146 F.3d 118, 121-22 (2d Cir. 2005); *Barden v. Keohane*, 921 F.2d 476, 478 (3d Cir. 1990); but see *Romandine v. U.S.*, 206 F.3d 731, 738 (7th Cir. 2000) (disagreeing with *McCarthy*, stating that a presumption does apply, but also stating that the effective decision is then made by the Attorney General or the state judge); *U.S. v. Eccleston*, __ F.3d __, 2008 WL 835699 (10th Cir. March 31, 2008) (even when state court orders state sentence to run concurrent to federal sentence, federal court must affirmatively order concurrent sentences or BOP determination of consecutive sentences is lawful); see also, *Fegans*, 506 F.3d at 1104 (noting the disagreement between *Romandine* and *McCarthy* with regard to a yet to be imposed state sentence).

It is true that § 3584(a) may contain a presumption that multiple sentences imposed at different times run consecutively unless ordered otherwise. *Hendrix v. Norris*, 81 F.3d 805 (8th Cir. 1996). It is also true that the district court's silence may indicate an intent to run the sentences consecutively. *Id*. at 808. When imposing concurrent or consecutive terms, however, the district judge must consider the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3584(b). In the present case, it was not possible for Judge Lake to consider all of the factors set forth in § 3553(a) with regard to Petitioner's state sentence,

because at the time of sentencing, there was no state sentence in existence. In addition, it might well have been improper for Judge Lake to make an "educated guess" as to the length of Petitioner's yet to be imposed state sentence. See, *e.g., United States v. Brewer*, 23 F.3d 1317, 1320-21 (8th Cir. 1994) (district court's "educated guess" regarding undischarged state sentence resulted in a failure to impose reasonable incremental punishment). It appears that the interests of justice would be best served in this case by giving effect to the state court sentence, *cf. Hendrix*, 81 F.3d at 808 (Heaney, J. dissenting), especially since the state court's unambiguous sentence does not conflict with any federal sentence or statute.

The Second Circuit has noted that "in some circuits, when a defendant is sentenced first in federal court and then on an unrelated offense in state court, neither judge can effect concurrent sentencing even if that is the intention of both." *Abdul-Malik v. Hawk-Sawyer*, 403 F.3d 72, 75 (2d Cir. 2005). The result is that the Executive branch may prosecute the case and then determine whether the sentence will be consecutive to, or concurrent with, a separate state sentence, all without regard to judicial intent. This result conflicts with basic principles of Federalism "because the federal BOP is given the effective authority to enforce (or not) a state court's determination that a state sentence should run concurrently." *Abdul-Malik*, 403 F.3d at 76; see also, *Fegans*, 506 F.3d at 1104.

The BOP's approach also appears to disregard considerations of comity. Comity is "[c]ourtesy among political entities (as nations, states, or courts of different jurisdictions), involving especially mutual recognition of legislative, executive, and judicial acts." Black's Law Dictionary, 7th ed. 1999. To the BOP's credit, it eventually, in effect, gave credence to the clear intent of the state court through the BOP's *nunc pro tunc* designation authority (#21).

In the present case, the BOP should run Petitioner's state sentence concurrent with his federal sentences, as explicitly ordered by the state court. Because Petitioner was already paroled by the State of Texas, and because this Court recommends that Petitioner's federal sentence commence on the date of imposition, this decision would not change Petitioner's current sentence calculation (#21). The only question remaining concerns credit for pre-sentence detention.

### 3. **Pre-Sentence Detention Credit:**

The BOP has now awarded Petitioner pre-sentence detention credit for the following dates: January 21, 1995; September 11, 2001 until September 12, 2001; August 29, 2002 until September 1, 2002; and December 4, 2002 until May 15, 2003 (#21-2, p. 6). The BOP has also decided to commence Petitioner's federal sentence on the date of imposition, May 16, 2003. In addition to the time now credited by the BOP, Petitioner seeks credit for the time he spent in a residential drug treatment center from September 10, 2002, until December 3, 2002. Although Petitioner is entitled to all of the pre-

sentence detention credit the BOP has now granted, he is not entitled to pre-sentence detention credit for the time he spent in the residential drug treatment center.

A defendant is entitled to prior custody credit for any time spent in official detention, prior to the date the sentence commences, that was not credited to another sentence. 18 U.S.C. § 3585(b). The BOP initially denied Petitioner any pre-sentence credit. The BOP cited the notation on the state judgment that gave Petitioner credit for time already served before imposition of his state sentence. The BOP then declined to give Petitioner federal credit for time credited to the state sentence. The BOP ignored, however, the rest of the state sentence. The state court specifically chose to run the state sentence concurrent with Petitioner's already imposed federal sentences. The BOP now, in effect, has run Petitioner's state and federal sentences concurrent with each other. Credit against only the state sentence, however, would not reduce Petitioner's period of actual imprisonment. Accordingly, Petitioner is entitled to pre-sentence detention credit toward his federal sentence as well. See *Kayfez v. Gasele*, 993 F.2d 1288 (7th Cir. 2003) (Postconviction Petitioner serving concurrent state and federal sentences was entitled to credit against his federal sentence for all of his pre-sentence incarceration, even though time had already been credited against state sentence; since Petitioner's sentences were concurrent, crediting only against state sentence would not reduce his period of actual imprisonment). This pre-sentence credit is limited to the time already given to Petitioner after the BOP's *nunc pro tunc* designation (#21).

Petitioner is not entitled to credit for the time spent in the residential drug treatment center. See *U.S. v. Johnson*, 418 F.3d 879, 880-81 (8th Cir. 2005) (no credit for time spent at a halfway house while on supervised release). This time was not "official detention" under 18 U.S.C. § 3585(b). See *Reno v. Koray*, 515 U.S. 50, 58-59, 115 S.Ct. 2021 (1995) (time spent in a community treatment center while on bail is not "official detention"). Accordingly, the BOP was correct to deny Petitioner pre-sentence credit from September 11, 2002, until December 3, 2002.

## V.   Conclusion:

The Court recommends that Petitioner's 28 U.S.C. § 2241 petition for writ of habeas corpus (#1) be GRANTED in part and DENIED in part. The BOP should calculate Petitioner's federal sentence as commencing on the date of imposition, May 16, 2003, and running concurrently with his state sentence. Petitioner should receive pre-sentence detention credit for: January 21, 1995; September 11, 2001 until September 12, 2001; August 29, 2002 until September 1, 2002; and December 4, 2002 until May 15, 2003. Petitioner should not receive pre-sentence detention credit for the period of September 11, 2002, until December 3, 2002.

DATED this 12th day of November, 2008.

_____
UNITED STATES MAGISTRATE JUDGE